Of Counsel:
OGAWA, LAU, NAKAMURA & JEW
Attorneys-at-Law
A Law Corporation

RICHARD A. ING          5812-0
KURT K. LEONG          5577-0
600 Ocean View Center
707 Richards Street
Honolulu, Hawaii  96813
Telephone:  (808) 533-3999
Facsimile: (808) 533-0144
E-mail: rai@ollon.com
E-mail: kkl@ollon.com

Attorneys for Defendant NANI MAU, INC.
and KENNETH FUJIYAMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDMUND C. OLSON, Trustee of the EDMUND C. OLSON TRUST NO. 2, | CASE NO.: CV12-00037 LEK-KSC |
| | (Foreclosure) |
| Plaintiff, | **DEFENDANTS' MEMO-RANDUM IN OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER, FILED FEBRUARY 29, 2012[8]; DECLARATION OF KENNETH FUJIYAMA; DECLARATION OF RICHARD A. ING; EXHIBITS "1 - 12"; CERTIFICATE OF SERVICE** |
| vs. | |
| NANI MAU, INC., a Hawai'i corporation; KENNETH FUJIYAMA; JOHN DOES 1-10, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S *EX PARTE* MOTION FOR
APPOINTMENT OF RECEIVER, FILED FEBRUARY 29, 2012**

COMES NOW, Defendants NANI MAU, INC. and KENNETH
FUJIYAMA (hereinafter collectively referred to as "Defendants"), by and through
their attorneys, Ogawa, Lau, Nakamura & Jew, Attorneys-at-law, A Law
corporation, and hereby submit the foregoing memorandum in opposition to
Plaintiff's *Ex Parte* Motion to for Appointment of Receiver, filed February 29,
2012.

I.   **BRIEF FACTS.**

   A.   **Parcels 13 and 93.**

   Defendant NANI MAU, INC. (hereinafter "Nani Mau") is the fee simple
owner of two separate parcels of land which are the subject of this foreclosure
action. The front parcel is a 23.3-acre parcel located in  Hilo, bearing Tax Map
Key: (3) 2-2-048-013 (hereinafter, "Lot 13"). The second parcel adjoins Lot 13 and
is comprised of a 31.4-acre parcel of undeveloped land identified as (3)-2-2-048-
093 (hereinafter "Lot 93"). Fujiyama Decl. ¶ 3.  The layout of both lots with
colored delineating boundaries is depicted in  the relevant portion of the tax map
and aerial photo attached as **Exh. "4"**.[1]

---

[1]   The boundaries of Lot 13 and 93 are highlighted in pink and yellow,
respectively.

Lot 13 is a developed property upon which exist a 20-acre botanical garden and 6 separate commercial buildings, including a restaurant. A number of the buildings are used as offices for Nani Mau support Nani Mau's business of maintaining and operating the botanical garden, conducting guided tours of the garden and hosting prearranged special events. Fujiyama Decl. ¶¶ 4-6. The garden contains a variety of fruit trees and hundreds of varieties of ginger, orchids, anthuriums, and other exotic plants. Fujiyama Decl. ¶ 6; **Exh. "1."** It is also home to three exotic birds and features famous sculpture made by world-renown Japanese artist, Yutaka Toyota, identified as the "Sculpture Cosmic Space Nani Mau Garden I" which is valued at $750,000. Fujiyama Decl. ¶ 9;**Exh. "2"**. Because Nani Mau's botanical garden is Nani Mau's primary attraction, Nani Mau has and continues to maintain the landscape and its facilities using its own personnel and on-site landscaping equipment.   Revenue generated from the business is used to pay the operating expenses of Nani Mau, including the salaries and wages of its employees, the utilities as well as the cost to maintain and repair the improvements, landscaping supplies and equipment. Nani Mau continues to conduct business and has no intentions of ceasing its operations. Fujiyama Decl. ¶ 15 & 19.

The adjoining Lot 93 is not utilized by Nani Mau to generate revenue. Being undeveloped or raw land, Lot 93 contains no commercial buildings and no tenants

and requires little to no upkeep or maintenance. The property has been slated for future development by Nani Mau and is expected to be subdivided and developed by Nani Mau in the future. A second sculpture made by Yutaka Toyota titled "Sculpture Cosmic Space Nani Mau Garden II" has been placed on Lot 93 and is also valued at $750,000.00. *See*, **Exh. "3."**

### B.    The Foreclosure Suit

On January 17, 2012, the Plaintiff, filed the above-captioned suit to foreclose on two separate mortgages. The first mortgage secures the repayment of a $2 million promissory note and encumbers the property upon which the botanical garden exists to wit: Lot 13. The second mortgage secures the repayment of a $1 million promissory note and encumbers the undeveloped adjoining parcel, Lot 93.

On February 29, 2012, the Plaintiff filed its *ex parte* motion to appoint a receiver over both Lot 13 and 93, asserting a right to do so under the two mortgages.

News of the Plaintiff's motion to seize the operations of Defendant through the appointment of a receiver spread quickly through the Hilo community and has resulted in the cancelation of several scheduled events due to customer uncertainty with respect to the availability of the botanical garden facilities. Fujiyama Decl. ¶ ¶ 40-41. Notwithstanding Nani Mau's efforts to convince prospective and existing clients that Nani Mau intends to continue its operations, the uncertainty as to the

availability of Nani Mau's facilities and the specter of replacing the existing management with an unknown receiver has detrimentally affected Nani Mau's ability to attract and retain existing customers.

On March 6, 2012, this Honorable Court entered a minute order directing Plaintiff to produce evidence addressing the factors enunciated by the courts in Canada Life Assurance Co. v. LaPeter, 563 F.3d 837 (9th Cir. 2009) and Sterling Savings Bank v. Citadel Development Co., 656 F.Supp.2d 1248 (D.Or. 2009). Following the entry of the minute order, Plaintiff's land manager, John Cross along with three females appeared unannounced at Nani Mau Gardens on March 9, 2012 after business hours. Neither the Plaintiff, nor its attorneys or Mr. Cross provided Defendants the undersigned with advance notice that Plaintiff was planning to perform an inspection that afternoon..

While at the property, Mr. Cross put his own lock around the front gate to prevent motor vehicle ingress and egress and then proceeded to roam around Lot 13, stopping at a bird cage to observe the animals therein. Without notice and without Defendant's permission, Mr. Cross then cut the lock off of one of the bird cages with a large bolt cutter and thereafter, replaced the lock with his own. Photographs of Mr. Cross roaming Lot 13 with his bolt cutters are attached as **Exh. "7"**. Mr. Cross and his party was then asked to leave by Nani Mau's staff. Mr. Cross complied by removing the lock he had placed around the front gate and left

the property.[2] *See*, **Exh. "7."**[3]   Based upon the timing of the filing of the court's minute order the contents of the supplemental memorandum submitted by Plaintiff in support of its motion, it appears that the purpose of the unlawful intrusion, lockdown and imprisonment was to obtain information for use by Plaintiff in this motion.

Notwithstanding Plaintiff's outrageous conduct, Plaintiff has failed to meet its burden of producing evidence to show that it is entitled to appointment of a receiver.

II.  **ARGUMENT**

A.  **The Appointment of a Receiver Is An Extreme Measure.**

The appointment of a receiver is an equitable remedy.  It is also considered to be an "extra ordinary" remedy which should be applied with caution. Canada, 563 F.3d at 844.  In Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, a case cited in Canada, the Aviation Court characterized the appointment of a receiver as "an extraordinary equitable remedy that is only justified in extreme

---

[2]   Mr. Cross and his entourage left the premises without providing Nani Mau's staff with the key to bird cage lock but later furnished Nani Mau's staff with a copy of the same.

[3]   Plaintiff's counsel subsequently notified Defendants' counsel of Plaintiff's intent to re-enter the property to perform another inspection. Given Plaintiff's destructive and alarming conduct, the improper imprisonment of the occupants of the botanical garden and the fact that the parties are in litigation, Defendants declined the request. Declaration of Richard A. Ing; **Exhibit 12.**

situations." *Aviation*, 999 F.2d at 316. While neither <u>Canada</u> nor <u>Aviation</u> elaborated on this point, it is clear that an appointment of a receiver, in certain circumstances, can be counterproductive and do more harm to the collateral and result in higher costs and/or losses to the litigants.   That the value of an appointment is also dependent on the nature of the collateral to be placed in receivership.  For example, the work a receiver must perform to collect mall rents is comparatively a simple compared to a receiver who takes possession of and manages a business who's source of income is primarily derived from the business' good will and reputation.

Here, Defendants opposes the motion because the Plaintiff, in effect, seeks to appoint a receiver over the business of Nani Mau and believes that if the motion is granted, the appointment will result in a drop of revenue and hence, the collateral which the receiver is appointed to preserve.

**B.     None of Plaintiff's Evidence or Arguments Pertain to Lot 93.**

It should be noted that Plaintiff seeks the appointment of a receiver over <u>two</u> parcels of land: one developed and one undeveloped.   All of the allegations set forth in Plaintiff's motion pertain to the developed land where the botanical garden is situated (i.e. Lot 13) and not the undeveloped land (Lot 93). As such, the motion should be summarily denied with respect to Lot 93.

**C.     The Weight of the Evidence Weighs In Favor of Denying the Motion.**

Defendants submit that when all of the allegations set forth in Plaintiff's motion are examined in light of the factors described by the <u>Canada</u> court, the weight of the evidence warrants a denial of the motion. With respect to each of the factors considered by the <u>Canada</u> court, Defendants respond as follows:

**1.     Plaintiff Claims Are Invalid.**

Plaintiff has filed a suit to foreclose two mortgages on two properties based on an alleged default of two promissory notes. The default is triggered upon Defendants' failure to pay the over due amount within a certain number of days <u>after</u> written notice of the overdue amount is furnished by the Plaintiff to the Defendants and the set minimum number of days has expired without Defendants' payment of the same. Once a default has been triggered, certain rights arise in the Plaintiff under the notes and corresponding mortgages.

Paragraph 4 on page 1 and 2 of both of the subject notes (which Plaintiff has failed to introduce in support of its motion) provide in relevant part:

4.     MY FAILURE TO PAY AS REQUIRED

   (A)   Notice from Lender. If I do not pay the full amount of any payment on time, the Lender may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least ten (10) days after the date on which the notice is mailed to me or, if it is not mailed, then (10) days after the date on which it is delivered to me.

* * * * *

    (C)   Default.  If I do not pay the overdue amount by the date stated in the notice described in (A) above, I will be in default.  If I am in default, the Lender may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  The Lender may also commence a lawsuit against me or take other reasonable steps to collect any overdue amounts....

*See,* **Exh.s "9" and "10"**.  Defendants contend that Plaintiff's rights to foreclose under the corresponding mortgages is triggered by Defendants default under the notes and that Plaintiff has failed to perform a condition precedent which triggers Defendants' default.  Accordingly, Plaintiff cannot establish as a matter of law that it is entitled to a foreclosure, let alone the relief which it now seeks with respect to this motion.[4]

In addition, the Plaintiff has failed to submit any competent evidence to establish that the Defendants are in fact in default of the notes as did the plaintiff in Sterling. Sterling, 656 F.Supp.2d  at 1263 ("Sterling has submitted evidence that Defendants are in default on the loan with an outstanding balance, including interest and fees, of over two million dollars).  Plaintiff has not even attempted to

---

[4]    Defendants incorporate herein by reference the arguments and supporting declaration and exhibits with respect to this argument in Defendants' Memorandum In Opposition To Plaintiff Edmund C. Olson Trust No. 2's Motion For Summary Judgment, Default Judgment And Interlocutory Decree Of Foreclosure Against Defendants Nani Mau, Inc. and Kenneth Fujiyama, Filed March 2, 2012[9], filed herein on March 26, 2012.

offer evidence as to outstanding principal, interest and late charges are; and this court is without information to determine whether Plaintiff's claim is in fact valid.

This factor, therefore, weighs against the appointment of a receiver..

### 2.    There Is No Fraudulent Conduct or the Probability of Fraudulent Conduct.

Defendants dispute Plaintiff claims that the removal of a bulldozer, back hoe, a Model A and Model T Ford within the last few days constitutes fraudulent conduct.

First, Plaintiff has failed to establish that the vehicles and/or equipment constitute collateral under the subject mortgages.

Secondly, the Model A and Model T[5] Fords were not and are not owned by Nani Mau as evidenced by the Certificates of Title, true and correct copies of which are attached hereto as **Exh. "11"**. Fujiyama Decl. ¶ 65. Hence, irrespective of whether they were removed from Lot 13 or not, they do not constitute collateral.

Thirdly, the bulldozer is owned by Ken Direction Corporation and was removed from Lot 13 to clear another property. Fujiyama Decl.,¶ 66.

Fourth, the backhoe was on Lot 13 on February 28, 2012 when Mr. Cross allegedly inspected the Properties but was not on the Lot 13 on March 9, 2012 because it had been moved to the Naniloa Golf Course the previous day, on March

---

[5]    The Model T Ford is actually another Model A Ford according to the Certificate of Title.

8, to remove a golf cart that had been driven into a ditch in an adjoining property. The golf cart was one of seventeen to twenty golf carts that had been seized by vandals and driven around the golf course. Fujiyama Decl. ¶ 67.

There is no assertion by the Plaintiff with respect to fraudulent conduct as it relates to Lot 93.

Accordingly, this factor weighs heavily against the appointment of a receiver.

### 3.  The Properties Are Not In Imminent Danger of Being Lost, Concealed, Injured, Diminished in Value or Squandered.

Lot 93 is similar to the property in Sterling. Lot 93 is raw land and doesn't produce any income for Defendant. Thus, there is no danger that income from this parcel can or will be lost. Furthermore, no evidence has been offered to show how Lot 93 is in imminent danger of being lost, concealed, injured, squandered or otherwise diminished in value. In Sterling, the court determined that the movant failed to show that the property was in imminent danger because it was composed of vacant lots that did not produce income, contained no structures to maintain or rents to collect and was not subject to squatters, vandals or thieves. Sterling, 656 F.Supp.2d at 1263. As the court found in Sterling, the court should also find that Lot 93 is not in imminent danger of being lost, concealed, injured, squandered or diminished in value.

With respect to the income generated by Nani Mau in connection with its use of Lot 13, Plaintiff fails to establish that rent or income is being collected from its use of the property.

Furthermore, even if we assume that rent and/or income is being generated for the sake of argument, Plaintiff has offered no evidence to establish that it is being inappropriately used by Defendants and not used to cover the legitimate business expenses to maintain the premises and to pay for its operational expenses. In fact, Nani Mau uses the income received to pay its operational expenses, including payroll, to maintain its operations and to maintain botanical garden and the improvements so that it remains in business. Fujiyama Decl. ¶ 15 & 19. Nani Mau has a right to use income generated from the use of Lot 13 to pay legitimate business expenses. The payment of these expenses by Nani Mau is no different from what a receiver would decide to do to maintain the operations of Nani Mau and preserve the collateral.

Defendants have not paid the real property taxes for 2010 and 2011 because Nani Mau disputed the County's assessment of the value of the land for real property tax purposes and was informed that it would waive its right to receive its payment back if the monies were paid pending the appeals. Nani Mau recently prevailed on the appeals and intends to pay the real property taxes. Fujiyama Decl. ¶ 17.

Plaintiff's assertions that Nani Mau's workers have been told to cease efforts to maintain the collateral and to stop feeding the exotic birds are not only based on inadmissible hearsay evidence but are also untrue.   Fujiyama Decl. ¶ 13-14. Plaintiff's claim makes little sense when you consider that Nani Mau business is dependent upon maintaining the botanical garden and the improvements.  If Nani Mau abandons Lot 13 as Plaintiff suggests, it will eventually cease to operate and will be forced to terminate its employees.  No evidence has been submitted to show that Nani Mau intends to "close its doors", terminate its employees or file for bankruptcy protection.

Moreover, recent photographs taken of Lot 13 (including those submitted by Plaintiff!) clear show that that Lot 13, the botanical garden and the improvements existing thereon are well-maintained. *See,* **Exh. "1".**

Defendants dispute Plaintiff's assertions that the exotic birds are not being properly cared for.   The health, safety and well-being of these animals were recently confirmed by the Human Society in a written report verifying that the birds are healthy and cared for. **Exh. "8".** Plaintiff's claim of neglect is clearly contradicted by the very authority entrusted by the public to ensure the safety and well being of animals in the County.

This factor weighs against the appointment of a receiver.

### 4.     Plaintiff's Legal Remedies Are Not Inadequate.

Plaintiff has already admitted that foreclosure is an adequate remedy.  Thus, no other argument on this point by Plaintiff should be considered.

The argument that delays in the foreclosure process creates a danger that the property will fall into disrepair is a speculation that the <u>Sterling</u> Court ignored as evidence of imminent danger to the property.  <u>Id</u>. at 1263.[6]  In <u>Sterling</u>, the plaintiff submitted testimony speculating that Defendant's lack of an incentive to preserve and protect the subject property because they may lose possession of it in the pending foreclosure action and that they lack the resources to take these preservative measures.  <u>Id</u>..  The <u>Sterling</u> Court, however, held that "[t]his was no evidence, however, and did not prove that the Property is in imminent danger."  <u>Id</u>.  Similarly, any argument that Plaintiff's legal remedy is inadequate due to a delay in the these proceedings should be disregarded.

Mr. Fujiyama's involvement in another suit does not constitute evidence that Plaintiff's remedies are inadequate. Plaintiff's concern about the sufficiency of Mr. Fujiyama's assets without evidence of the same is simply speculation.

This factor therefore weighs against the appointment of a receiver.

### 5.     Plaintiff Would Not be Harmed if the Appointment Is Denied or Such Harm Would Not Outweigh the Injury to Nani Mau.

---

[6]

Defendant continues to use income generated from the use of Lot 13 to pay for legitimate business expenses incurred in the conduct of its operations. Fujiyama Decl. ¶ 15 & 19. No evidence to the contrary has been offered by Plaintiff except that the monies are not being used to pay Plaintiff or the real property taxes. Plaintiff has offered no evidence to establish that the income generated by Nani Mau is sufficient to cover all of Nani Mau's ongoing expenses and the monthly mortgage obligation under the subject notes. If the ongoing business expenses are not paid, Nani Mau will not be able to maintain the botanical garden and improvements and be in a position to repay the loan.

As previously stated, Defendants dispute Plaintiff's hearsay allegation that Nani Mau's employees have been instructed to stop maintaining the grounds and are prohibited from feeding the exotic birds. Both the photos submitted by Plaintiff and Defendants show that the grounds are well kept and maintained. Maintaining the garden and the improvements thereon simply makes sense from a business perspective considering that the garden is Nani Mau's primary source of business. The claim that Nani Mau's birds are not being cared for is contradicted by the recent Human Society report. See, **Exh. "8**."

No evidence has been submitted by Plaintiff to establish that the garden is not being cared for, that the landscape is overgrown or that Nani Mau has allowed the buildings to deteriorate by failing to provide routine maintenance and care.

Nani Mau's business is unlike that of a shopping mall complex with commercial spaces and tenants who pay monthly rent that the receiver can collect and hold pending the outcome of this case. Nani Mau operates a 20 acre botanical garden and a restaurant the supports scheduled events held on the grounds.  What Plaintiff is proposing to do with the receiver is to take Nani Mau's business over.  Nani Mau's clients and customers often plan their events months and even years in advance. The events not only include international tours but also high school banquets and weddings.  If a receiver is appointed, Defendants believe that its existing customers and future customers will be driven to find alternative venues for fear that Nani Mau Gardens and its facilities will be unavailable or that their event will be canceled by the receiver. Nani Mau has already lost several accounts as a result of this law suit and at least one customer has chosen to move its event to the Naniloa Volcanoes Resort. Fujiyama Decl. ¶ 41.

This factor weighs heavily against the appointment of a receiver.

**6.    Plaintiff Has a Low Probability of Success**
**and Possibility of Irreparable Injury.**

A default has been entered against the Defendants.  However, Defendants intend to file a motion to set aside the default on the basis that Plaintiff has failed to satisfy the requirements of providing Defendants with the required written notices and the required minimum time period to pay the outstanding amounts owed on the notes, if any.

Furthermore, Defendant Nani Mau has an equitable right of reinstatement and has exercised that right as against the loan and corresponding mortgage which encumbers Lot 93 by offering to pay the delinquency together with attorney's fees and costs.  Defendant anticipates that it will be in position to reinstate or pay off the mortgage loan on Lot 13 prior to the entry of any order of foreclosure in this matter.  In such event, Plaintiff prevail in this action and will be forced to reinstate both mortgage loans.

This factor weighs against the appointment of a receiver.

### 7.    Plaintiff's Interest Will Not be Well-served  by a Receiver.

No evidence has been offered by Plaintiff to establish that Lot 93, the undeveloped parcel, is not being adequately maintained.  Thus, the appointment of a receiver over Lot 93 will serve no practical purpose and will not serve any interest of the Plaintiff.  This factor weighs against the appointment of a receiver for Lot 93.

The recent photographs depicting the conditions of Lot 13, including those submitted by Plaintiff shows that contrary to Plaintiff's assertions, Lot 13 is being well-cared for by Nani Mau. See, Exh. "B" to the Motion and **Exh. "1"** attached hereto.  The landscaping is being maintained, the parking lots remain clear of vegetation and debris and the walkways and surrounding foliage appear to be clean and well-kept.

Plaintiff offers no evidence that a receiver will be better able to manage and conserve Lot 93, the botanical gardens and the improvements existing thereon, any better then Nani Mau and to utilize the income from the property more efficiently and effectively than Nani Mau.[7] Id. at 1265[8]. Defendants have already established that none of the collateral has been fraudulent transferred. Fujiyama Decl. ¶¶ 65-67. Furthermore, there is no evidence that Nani Mau is engaged in a pattern of conduct that would diminish or injure the collateral to warrant the appointment of a receiver to take over Nani Mau's management and control over its property and its business.

Furthermore, if a receiver is appointed, it will likely result in a substantial decline in revenues that Nani Mau uses to maintain the properties and the improvements existing thereon. The appointment of a receiver will result in substantial cost and expense to the prejudice of Nani Mau since those costs and expenses are anticipated to be covered by the foreclosure sale proceeds if and when

---

[7]     The mortgages specifically exclude "consumable goods" from the collateral. See, Plaintiff's Ex Parte Motion for Appointment of Receiver, Exh. "A(1)" and (2), ¶ 8, p2. Thus, Plaintiff's statement regarding the receiver's possession, conservation and management of consumable goods goes beyond the scope of what the mortgages provide.

[8]     In Sterling, the court noted that the Deed of Trust already required the defendants to preserve and protect the property and that the plaintiff offered no evidence that the receiver would manage the property better than the defendants, especially because the plaintiff had not shown that defendants were managing the property poorly. Id, at 1264.

that actually occurs.  In short, the cost associated with the appointment of a receiver just simply outweighs any benefit Plaintiff stands to gain by the appointment.

This factor weighs against the appointment of a receiver for both lots.

### 8.    The Properties Are of Sufficient Value to Insure Payment

Plaintiff improperly lumps the balance of both loans together, claims that an aggregate of over $3 million is owed and then compares this amount to the aggregate real property tax values of both parcels as if the mortgages are blanket mortgages covering more than one parcel.  Its argument is misleading and ignores the fact that there are two separate mortgages that cover two different parcels. Consideration must be given to the value of each property and compared against the amount owed on the loan and corresponding mortgage on the property which secures Nani Mau's performance.  Plaintiff's analysis fails to do this and should therefore be disregarded as having no bearing on this factor.

Furthermore, even if Plaintiff used the proper method of comparing the value of two properties to the balance of the mortgage loan owed on each, the analysis could not be performed because Plaintiff has failed to establish what the actual balances are.  Plaintiff has failed to produce any records showing the balance owed on each mortgage loan and has even failed to state what that amount is in any of its supporting declarations to the motion.  Since there is no way to

determine what amount is owed on the first mortgage loan covering Lot 13 and Lot 93, there can be no meaningful comparison of those balances in relation to the value of the properties.

Moreover, even if we assume for the sake of argument, that the original principal amounts are still owed on each note, Defendants submit that the value of each lot equals to or exceeds the amount of the obligations and that Plaintiff's loans remain secured.  While Defendants believe that the actual fair market value of each of the lots substantially exceeds the reported real property tax ("RPT") assessed values by the County, the RPT assessed value for Lot 13 actually shows that it exceeds the amount of the mortgage loan.  *See*, Exh. "E" to Plaintiff's Supplemental Memorandum in Support of Its Ex Parte Motion for Appointment of Receiver [8], filed herein on March 12, 2012 (hereinafter "Supplemental Memorandum").  The reported value of Lot 13 is $2,120,100.  This value doesn't include the value of the personalties owned by Nani Mau that also serve as collateral for the loan (i.e., landscaping and restaurant equipment and supplies) and the large sculpture made Yutaka Toyota that exists on Lot 13, valued at $750,000.00. See, **Exh. "2".**  All things considered, the total value of the collateral securing the mortgage loan on Lot 13 clearly and substantially exceeds the balance owed on the mortgage loan.

Similarly, the value of Lot 93 substantially exceeds the $1 million mortgage loan which encumbers said lot.  As recent as January 6, 2011, Nani Mau received a $2 million offer to purchase the lot. *See*, **Exh. "6"**.  Unlike an appraisal performed for real property tax purposes, the offer to purchase the property for $2 million is compelling evidence of what the market is <u>actually</u> willing to pay for the property.

The values of both lots exceed the mortgage loans encumbering each.  This factor therefore weighs against the appointment of a receiver.

**9.     Defendants Financial Standing Is Not Doubtful.**

Defendants are currently involved in another law suit.  However, unlike the defendants in <u>Sterling</u> in which the court concluded that the defendants were in doubtful financial standing because of the defendants were involved in eight (8) foreclosure suits, the suit Defendants are named in involves a disputed commercial transaction relating to the sale of land and not a loan.  The fact that a lawsuit over a commercial dispute was filed against Defendants has no bearing on the Defendants' financial status.[9]

As previously stated, Nani Mau withheld payment of the real property taxes due to a pending appeal of both the 2010 and 2011 RPT assessments.

---

[9]     Counsel has been informed that the Defendants have denied liability in the lawsuit and that Plaintiffs recently filed a motion for summary judgment and the motion was denied.

While Defendants involvement in another law suit certainly doesn't enhance Defendants' financial standing, the suit alone is insufficient to conclude that Defendants financial standing is doubtful.  This factor therefore weighs against the appointment of a receiver.

### 10.    Plaintiff Has Failed to Show "Something More" to Justify the Appointment of a Receiver with Managerial Powers.

In Sterling, the court noted the distinction "between a receiver with the power to collect rents during the pendency of a foreclosure action, and a receiver with the additional power to manage the mortgaged property" and required that with respect to the latter, the Plaintiff must not only show the doubtful financial standing of the defendant and insufficient value of the property, but also "something more." Canada, 563 F.3d at 844 (citation omitted). The "something more" may be "the danger of waste, delays in foreclosure or any circumstance which commends itself to a court of equity as a reason for granting the relief sought." Id., at 845.

Here, Plaintiff argues that the alleged waste, diversion of income, neglect and disappearing collateral all constitutes the "something more" that justifies the appointment of a receiver to not only collect the rents but to also take control of the management of the two properties.  These arguments have already been made by the Plaintiff in support of its position on the aforementioned factors and do not

constitute the "something more" that the <u>Sterling</u> Court requires. The fact that Plaintiff has offered no new arguments demonstrates that it has "nothing" more.

Defendants have already refuted each of Plaintiff's allegations establishing: 1) the income is not being diverted but used to operate the property and preserve the collateral; 2) Nani Mau continues to maintain its main attraction which is it botanical garden as well as the existing improvements on Lot 13; and 3) the collateral alleged to have been removed from Lot 13 were not owned by Nani Mau and/or were not removed from the properties. In short, there is no evidence of economic waste and nothing to suggest that the foreclosure will be delayed. If anything, the appointment of receiver would constitute a waste of judicial resources, disrupt Nani Mau's ability to generate income which it uses to maintain the properties and result in an erosion of the equity Nani Mau has in both properties.

Additionally, Defendants note that no judgment has been granted ordering the foreclosure of the properties. The granting of the foregoing motion prior to the entry of such a judgment would be premature and substantially prejudicial to Nani Mau's operations. For this reason, Defendants submit that this motion should be considered and decided after the entry of an interlocutory decree of foreclosure, if any, and not before.

Based on the above, this factor weighs against the appointment of a receiver.

III.   **CONCLUSION.**

The appointment of a receiver is an "extraordinary" remedy. Id. at 1258. The Plaintiff has not established that the equities favor the appointment of a receiver to collect the rents from the two properties which are the subject of this foreclosure action and has failed to show "something more" that would warrant the granting of managerial powers over the properties.  For these reasons, Defendants respectfully request that the foregoing motion be denied.

DATED:     Honolulu, Hawaii, March 27, 2012.

/s/ Richard A. Ing
RICHARD A. ING
KURT K. LEONG
Attorney for Defendant NANI MAU,
INC. and KENNETH