IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDMUND C. OLSON, Trustee of the EDMUND C. OLSON TRUST NO. 2,<br><br>        Plaintiff,<br><br>vs.<br><br>NANI MAU, INC., a Hawai'i corporation; KENNETH FUJIYAMA; JOHN DOES 1-10,<br><br>        Defendants. | CASE NO.: CV12-00037 LEK-KSC<br>(Foreclosure)<br><br>**DECLARATION OF KENNETH FUJIYAMA** |

**DECLARATION OF KENNETH FUJIYAMA**

KENNETH FUJIYAMA, hereby declares as follows:

    1.    I am a named Defendant in the above-captioned matter and serve as the Chief Executive Officer of Defendant NANI MAU, INC. I am authorized to make this Declaration on behalf of Defendant NANI MAU, INC. in support of Defendants' Memorandum in Opposition to Plaintiff's *Ex Parte* Motion for Appointment of Receiver, filed February 29, 2012

    2.    I have personal knowledge of the matters set forth herein except where premised upon information and belief.

3. Defendant NANI MAU, INC. (hereinafter, "Nani Mau") owns the fee simple interest in two real properties located in Hilo, Hawaii, more particularly described as:

    a. that certain 23.3-acre parcel bearing TMK: (3) 2-2-048-013 (hereinafter "Lot 13"); and

    b. that certain 31.4-acre parcel of land identified as TMK (3)-2-2-048-093 (hereinafter "Lot 93").

4. Lot 13 is a developed property upon which exists a botanical garden with a restaurant and 6 commercial buildings.

5. Nani Mau's business primarily consists of the operation and maintenance of the botanical garden.

6. The botanical garden is available for viewing to the general public through arranged tours and planned group functions. An on-site restaurant provides food and beverage services for the garden's visitors and planned events.

7. The garden contains a variety of fruit trees and hundreds of varieties of ginger, orchids, anthuriums and other exotic plants.

8. Attached hereto as **Exhibit "1"** are true and correct copies of photographs taken by Declarant on or about March 9, 2012 which

accurately depict the conditions of Lot 13 and/or the events that occurred on that date.

9. The garden features several exotic birds as well as a sculpture made by Yutaka Toyota named "Sculpture Cosmic Space Nani Mau Gardens I". A true and accurate photo depicting the sculpture is attached hereto as **Exhibit "2"**.

10. The garden is Nani Mau's primary source of attraction and income is derived from the various aforementioned activities.

11. Nani Mau has and continues to maintain the landscape and improvements thereon using its own personnel and equipment.

12. Nani Mau also continues to feed and care for the animals on Lot 13.

13. Defendants did not instruct Nani Mau employees to cease in their care and maintenance of Lot 13 and the improvements and personalties located and/or existing thereon.

14. Defendants did not instruct Nani Mau employees to cease caring for and feeding the animals on the property.

15. All income received by Nani Mau derived from its use and ownership of Lot 13 is used to pay for expenses relating to the maintenance and upkeep of the garden and improvements and to pay for the

business' operational costs, including without limitation, insurance, utilities and employee wages.

16. Nani Mau did appeal the County of Hawaii's real property tax assessments for the subject properties for the years 2010 and 2011 and withheld payment of the same based on an understanding that it would waive the right to appeal the assessments if paid.

17. Nani Mau prevailed in its appeal and was notified of the same at the end of 2011.

18. Nani Mau intends to pay the adjusted real property taxes.

19. All revenue generated from Lot 13 is used by Nani Mau to pay for ongoing expenses to maintain, upkeep and repair the botanical garden and the improvements as well as Nani Mau's operating costs. These include without limitation, utilities, insurance, labor, landscaping, equipment and restaurant operational expenses.

20. Nani Mau continues to operate its business and has no intentions of terminating its services or from ceasing its operations.

21. The adjoining parcel, Lot 93, is primarily raw land with no commercial buildings and is unoccupied.

22. The only improvements that exist on Lot 93 are three man-made ponds, roadways used to access the lot and a sculpture made by

Yutaka Toyota called "Sculpture Cosmic Space Nani Mau Garden II". A true and accurate photo depicting the sculpture is attached hereto as **Exhibit "3"**.

23. Declarant is informed and believes that the value of the sculptures on Lot 13 and Lot 93 are $750,000, each based on the artist's own assessment true and accurate copies of which are attached hereto as **Exhibits "2" and "3"**.

24. Lot 93 generates no revenue or income for Nani Mau and requires no routine maintenance other than keeping roads on the property clear from debris and vegetation.

25. Lot 93 is not used by Nani Mau to conduct any part of its business as it relates to the botanical garden and the property is not open to the general public.

26. Attached hereto as **Exhibit "4"** are true and accurate copies of the relevant portion of the current tax map depicting the boundaries of Lots 13 and 93 and a satellite photo obtained online map utility provided by the website, "google.com."

27. Lot 93 is undeveloped and has no improvements except for a sculpture, minimal roadways and three man-made ponds. There are no tenants on Lot 93 and the property is not being rented or leased. As such

5

Defendant Nani Mau does not receive income, rents and/or profits in connection with its ownership thereof.

28. Lot 93 is currently being developed by Defendants into a 22-parcel subdivision identified as Lanipono Place.

29. On December 20, 2011, Defendants submitted a revised incremental final plat maps for the subdivision to the Hawaii County Department of Planning. A true and accurate copy of the Planning Department's acknowledgement of its receipt of Defendants' final plat maps is attached hereto as **Exhibit "5."**

30. In or about the second week of January 2012, Declarant received from the Department of Public Works a copy of Defendants' proposed construction plans for the subdivision with comments from the Department

31. Defendants have incorporated the aforesaid comments into the final set of construction plans and submitted these plans to the Departments of Public Works, Water and Environmental Management for their respective final approval this week.

32. Once the aforesaid Departments have approved of the final construction plans, Defendants intend to submit the plans to the Department of Planning for its final plan approval.

33. Once Defendants have obtained all of the necessary Departmental signatures on the final plan, Defendants intend to re-commence construction of a development plan for the subdivision which, once completed, will put Defendants in position to market and sell each individual lot to the general public.

34. Defendants anticipate that this entire process will be completed in approximately 8 months.

35. Defendants anticipate that the completed lots will sell for a purchase price ranging from $180,000 to $250,000 per lot with an average sale price of $230,000 per lot.

36. The total revenue Defendants anticipate they will receive from the sale of all of the lots is approximately $5 million. The expected sales revenue should be sufficient to pay both of the subject note obligations encumbering Lot 13 and 93 in full.

37. As an alternative to completing the development of Lot 93, Defendants may sell Nani Mau's interest and use said sum to pay off the mortgage obligation which encumbers said property, in full.

38. Defendants have received a written offer to purchase Lot 93 for the purchase price of $2 million. which offer exceeds the mortgage

loan encumbering the property. A true and accurate copy of the relevant portion of the offer is attached hereto as **Exhibit "6."**

39. Defendant NANI MAU desires to retain ownership of both Lots 13 and 93 and is currently ready, willing an able to reinstate the mortgage loan on Lot 93 by paying Plaintiff all delinquent payments required to be paid under that certain $1 Million Promissory Note, dated June 26, 2008, including any accrued interest and charges that may be owed pursuant thereto, together with Plaintiff's legal fees and costs incurred in connection with the same.

40. Subsequent to the filing of this lawsuit, at least two of Nani Mau's customers cancelled their reservations to host a pre-scheduled event at Nani Mau Gardens. Declarant was informed and believes that the cancellation was due to the customers' uncertainty as to whether the court, commissioner or receiver would permit Nani Mau to continue its operation on Lot 13.

41. One customer requested that its event (i.e., a Hilo High School Prom) be relocated to the Naniloa Volcanoes Resort in order to avoid any unforeseen cancelation on account of these foreclosure proceedings.

42. The location of the event will be moved to Naniloa Volcanoes Resort in April 2012 at the customer's request but Nani Mau will retain the account as the service provider.

43. On March 9, 2012, Plaintiff's land manager, John Cross, entered Nani Mau Gardens (i.e., Lot 13) after normal business hours with three other individuals and proceeded to secure the front gate to the premises with his own chain and padlock.

44. By locking the front gate with his own lock, Mr. Cross prevented Nani Mau's employees from exiting and entering the premises with their motor vehicles.

45. Neither the Plaintiff, its attorney nor Mr. Cross previously notified Defendants of Plaintiff's intention to enter the premises to perform an inspection of the collateral.

46. While on the property, Mr. Cross made his way over to cages holding three exotic birds and cut the lock off of the cage with a large bolt cutter that he was carrying. See, **Exhibit "7"**.

47. Mr. Cross then replaced the broken lock with his own lock and then left the premises without giving Defendants a key to the lock.

48. A key to the bird cage lock was later given to Nani Mau two days later on March 11, 2012.

9

49. On March 10, 2012, Starr Yamada from the Hawaii Island Humane Society, appeared at Lot 13 without prior notice to Defendant and examined Nani Mau's exotic birds.

50. On the morning of March 12, 2012, Declarant contacted the Hawaii Island Humane Society ("Society") in response to a call that he had received from the Society regarding a complaint the Society had receive and was informed by a Mr. Benjamin Koehler that the Society had received a complaint about Nani Mau's birds. Declarant then scheduled an inspection of Nani Mau's birds later that afternoon with Mr. Koehler.

51. In the early afternoon of March 12, 2012, Declarant met with Mr. Koehler at Nani Mau Gardens and Mr. Koehler inspected Nani Mau's birds and found them to be in good health.

52. On or about March 14, 2012, the Society faxed a Case Detail report to Declarant containing the Society's notes, observations and findings with respect to the condition of Nani Mau's birds. A true and accurate copy of the report is attached as **Exhibit "8"**.

53. The report confirms that during both inspections conducted by the Society's investigators, the inspectors found the birds to be in good condition and/or health.

54. Nani Mau, through its counsel, has offered to reinstate the aforesaid mortgage loan on Lot 93 by paying Plaintiff all delinquent payments required to be paid under that certain $1 Million Promissory Note, dated June 26, 2008, including any accrued interest and charges that may be owed pursuant thereto, together with Plaintiff's legal fees and costs incurred in connection with the same.

55. Nani Mau remains ready, willing and able to reinstate the aforesaid mortgage loan on Lot 93 by paying Plaintiff all delinquent payments required to be paid under that certain $1 Million Promissory Note, dated June 26, 2008, including any accrued interest and charges that may be owed pursuant thereto, together with Plaintiff's legal fees and costs incurred in connection with the same.

56. Nani Mau is also ready, willing and able to continue making future monthly mortgage payments to keep said mortgage loan current.

57. Nani Mau is currently in the process of obtaining sufficient funds to reinstate the $2 Million Note and corresponding mortgage and anticipates that it will be in a position to do so in a matter of several days to several weeks.

58. The notes which are the subject of this law suit require that Plaintiff provide Defendants with written notice of an overdue amount and a minimum period of time within which the amount must be paid.

59. Attached hereto as **Exhibits "9" and "10"** are true and correct copies of the relevant portions of the $2 Million Promissory Note and $1 Million Promissory Note alleged by Plaintiff to be in default. Said notes are attached as Exhibit 1 to Plaintiff's Separate and Concise Statement of Facts in Support of Plaintiff's Motion for Summary Judgment and Interlocutory Decree of Foreclosure, filed herein on March 2, 2012.

60. Defendants have not received any written notices from Plaintiff advising Defendants that if Defendant NANI MAU did not pay the overdue amount owed under either note obligations by a certain date, it will be in default.

61. Defendants have also never received a written notice from Plaintiff prior to the commencement of this action requiring Defendants to pay Plaintiff the full amount of the principal and all the interest owed on either of the note obligations which are the subject of this law suit.

62. Defendants have never received nor are in possession of any written assignment of the subject notes and mortgages to Edmund C. Olson.

63. Prior to the commencement of this law suit, Nani Mau made both principal and interest payments on the subject notes.

64. Accordingly, Defendants believe that the principal balance of the notes are less than the original amount loaned which appears on face of each of the notes to wit: $2 million and $1 million, respectively.

65. Attached hereto as **Exhibit "11"** are true and accurate copies of the Certificate of Titles to a 1923 and 1929 Model A Ford. The titles to the aforesaid vehicles have been and currently are titled to Ken Direction Corp. and not Nani Mau.

66. From time to time, Nani Mau uses a bulldozer on Lot 13. The bulldozer, however, is owned by Ken Direction Corp. The bulldozer was not on Lot 13 during Mr. Cross' alleged inspection in February and March 2012 because it was being used to clear another lot.

67. Nani Mau does own a backhoe. The backhoe was on Lot 13 on February 28, 2012 when Mr. Cross allegedly inspected the Properties but was not on the lot on March 9, 2012. The backhoe had been moved from lot 13 the previous day, March 8, to the Naniloa Golf Course to remove a

golf cart that had been driven into a ditch in an adjoining property. The golf cart was one of seventeen to twenty golf carts that had been seized by vandals and driven around the golf course..

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Hilo, Hawaii, _3-27-2012_


KENNETH FUJIYAMA