**Hawaii Association of REALTORS®**

## DEPOSIT RECEIPT OFFER AND ACCEPTANCE (DROA)
Hawaii Association of Realtors® Standard Form
Revised 3/06   For Release 5/06



COPYRIGHT AND TRADEMARK NOTICE: This copyrighted Hawaii Association of REALTORS® Standard Form is licensed for use by the entire real estate industry on condition that there shall be no alteration of the printed portions, pagination, or paragraph numbers or breaks. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Reviewed by: _____
Principal Broker/Broker-in-Charge

Reference Date: __9-22-2010__

Property Reference or Address: __521 Makalika Street   Hilo, Hawaii   96720__

**CONTRACT: THIS IS MORE THAN A RECEIPT FOR MONEY. IT IS A LEGALLY BINDING CONTRACT. READ IT CAREFULLY. HANDWRITTEN OR TYPED PROVISIONS HEREIN SHALL SUPERSEDE ANY PRINTED PROVISIONS IF THERE IS A CONFLICT. FILL IN ALL BLANKS. WRITE "NA" IF NOT APPLICABLE. SECTIONS AND PARAGRAPHS WITH CHECK-OFF BOXES ARE OPTIONAL, ALL OTHERS ARE STANDARD PROVISIONS.**

### SECTION A: AGENCY DISCLOSURE

A-1   **AGENCY.** The Buyer and/or Seller in a real estate transaction in Hawaii may retain a real estate Brokerage Firm as their agent. In such case, the Buyer and/or Seller is represented by the Brokerage Firm and all of its licensees. Hawaii law requires real estate licensees to disclose orally or in writing to Seller and/or Buyer whom the licensee represents. The form of representation may be one of the following:
(a) **Seller's Agent.** Brokerage Firm represents Seller only unless a disclosed dual agency exists. Seller's Agent owes the highest duties to Seller, including confidentiality, loyalty, and utmost care.
(b) **Buyer's Agent.** Brokerage Firm represents Buyer only unless a disclosed dual agency exists. Buyer's Agent owes the highest duties to Buyer, including confidentiality, loyalty, and utmost care.
(c) **Dual Agent.** Brokerage Firm represents both Buyer and Seller. This commonly occurs when licensees in the Brokerage Firm representing Seller have Buyer clients looking for types of property similar to Seller's property. In such event, the Brokerage Firm and all of its licensees represent both Buyer and Seller and are dual agents. Dual agents must remain neutral in negotiations and must not advance the interest of one party over the other. **A separate Dual Agency Agreement is required under Hawaii law.**
(d) **No Agency Representation** (see A-2 below)

**DISCLOSURE.**
(a) **Seller Representation:** Seller is represented by the Brokerage Firm _____ and all its licensees. Brokerage Firm is[ ] is not[ ] a member of the National Association of REALTORS®.

(b) **Buyer Representation:** Buyer is represented by the Brokerage Firm _____ and all its licensees. Brokerage Firm is[ ] is not[ ] a member of the National Association of REALTORS®.

(c) **Dual Agency Representation:** Seller and Buyer are represented by the Brokerage Firm __Ken Fujiyama__. Brokerage Firm is[ ] is not[ ] a member of the National Association of REALTORS®. ~~A separate Dual Agency Agreement is required.~~

(d) **No Agency Representation:**
[ ] **Seller is a Customer** and is not represented by a Brokerage Firm.
[ ] **Buyer is a Customer** and is not represented by a Brokerage Firm.
**It is recommended that Customers seek legal counsel prior to signing a DROA.**

If requested, a licensee may present a Customer's DROA to Seller and report Seller's response. A licensee cannot, however, negotiate for or otherwise advise a Customer in the transaction.

**Buyer and Seller acknowledge that oral or written disclosure relative to agency representation was provided to them before the signing of this DROA.**

_____ (Buyer's initials)              _____ (Seller's initials)

NAR Code of Ethics: Buyer and Seller are aware that the National Association of REALTORS® holds its members accountable for their actions through a strict Professional Code of Ethics, which includes a grievance system to address complaints. Non-members are not held to the same standards as members, nor are they required to participate in the grievance system.

_____   1/6/11                                      ____1-6-2011__
BUYER'S INITIALS & DATE                                   SELLER'S INITIALS & DATE




EXHIBIT 6

### SECTION B: DEPOSIT RECEIPT

Received from __Makalika 521 LLC__, the "Buyer," the sum of $__5,000.00__
in the form of __check__ as an initial earnest money deposit.
Acknowledged by _____ Agent's name: __Ken Fujiyama__
(Signature of Broker or Salesperson)
Bus._____ Fax_____ Cell __640-8993__ E-mail __ken@hottours.us__
Brokerage Firm/Address: _____

[ X ] B-1  The initial deposit check shall remain uncashed, shall be retained by the Brokerage Firm assisting Buyer, and shall be deposited with Escrow or in a trust fund account by the next business day after the Acceptance Date.

**INTEREST ON DEPOSIT FUNDS**
*(Choose B-2 OR B-3).*
[  ] B-2  Buyer to Earn Interest. The parties instruct Escrow to place Buyer's deposit(s) into an interest-bearing account with all interest to be credited to Buyer at closing. Buyer shall pay any processing fee required by Escrow and all costs of setting up, maintaining and closing the account. Fees/costs may exceed the interest earned.
[ X ] B-3  Buyer not to Earn Interest. Buyer hereby waives the right to place Buyer's deposits in an interest-bearing account. Buyer understands any interest earned on such deposits shall belong to Escrow.

### SECTION C: ADDENDA AND OFFER

**ADDENDA.** The following addenda, if checked, are attached to and made a part of this DROA.

[  ] Existing "As Is" Condition                        [  ] Lead Based Paint
[  ] Residential Leasehold Property                    [  ] Dual Agency
[  ] Standard Oceanfront Property                      [  ] VA Financing
[  ] FHA Financing/Real Estate Certification           [  ] 1031 Exchange
[  ] Agreement to Occupy Prior to Close of Escrow      [  ] Rental Agreement
[  ] Plain Language                                    [  ] Purchase Money Mortgage
[  ] Agreement of Sale                                 [  ] Short Sale
[ x ] Other __Vacant Land__                            [  ] Other _____
[  ] Other _____                                  [  ] Other _____

**OFFER TO BUY.** Buyer offers to buy the Property described below on the terms and conditions contained herein, acknowledges receipt of a copy, and agrees that this Offer shall be binding if accepted by Seller on or before:

Date __January 6, 2011__   Time __5:00__   AM/**PM**

C-1  Purchase price for the Property is $__2,000,000.00__ U.S. Dollars, paid as follows:

$__5,000.00__ Initial deposit from Section B above.

$__490,000.00__ Additional deposit, if any, paid into Escrow on or before _____

$__1,505,000.00__ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing.

$__2,000,000.00__ TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs).

$_____ By way of _____

$_____

$__2,000,000.00__ TOTAL PURCHASE PRICE

_____
BUYER'S INITIALS & DATE

_____
SELLER'S INITIALS & DATE  1-6-2011

**PROPERTY**

C-2 Description: Tax Map Key: Div. __3__ /Zone __2__ /Sec. __2__ /Plat __048__ /Parcel __093__ /CPR _____ (if applicable).
All of that __fee simple__ Property situated at: __521 Makalika Street__
leasehold/fee simple                                   __Hilo, Hawaii 96720__

Described as follows: __See attached Exhibit "A"__

C-3 Sale Includes: All built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, attached carpeting, and the following indicated items:

[ ] Range           [ ] Microwave      [ ] Refrigerator      [ ] Smoke/Heat Detectors
[ ] Disposal        [ ] Washer         [ ] Dryer             [ ] Existing Window Coverings
[ ] Dishwasher      [ ] Ceiling Fan    [ ] Chandelier        [ ] Solar Heating System
[ ] Air Conditioner [ ] TV Antenna     [ ] TV Cable Outlet   [ ] Automatic Gate/Door Openers
[ ] Sprinkler System [ ] Security Alarm [ ] All Pool Equipment [ ] Furnishings per Inventory
[ ] Other_____

C-4 **Specifically Excluded:**

**CLOSING**

C-5 For purposes of this DROA, closing shall be the date when all appropriate conveyance documents are recorded. Buyer and Seller agree to promptly execute appropriate or customary documents when requested by Escrow.

C-6 The "Scheduled Closing Date" shall be on or before __January 30, 2011__

*(Choose C-7 OR C-8)* Any Change to the Scheduled Closing Date Shall Be Handled as Follows:

[ na ]C-7 Extensions. There is no automatic right to extend. If, for reasons beyond a Buyer's or Seller's control, a party cannot perform the obligation to close by the Scheduled Closing Date, then such party may extend the Scheduled Closing Date up to __na__ days by delivery of written notice to the other party prior to the Scheduled Closing Date. Thereafter, time shall be of the essence and if a party fails to perform by the extended Scheduled Closing Date, such party shall be considered in default and the Default Provision shall apply. The extended Scheduled Closing Date may not be further extended unless both Buyer and Seller so agree in writing. This provision relates only to the extension of the Scheduled Closing Date.

[ x ]C-8 **Time is of the essence** and the Scheduled Closing Date may not be extended unless both Buyer and Seller so agree in writing.

C-9 Escrow. This transaction shall be escrowed by: __First American Title__ ("Escrow").

The parties shall timely provide to Escrow fully executed copies of all notices, receipts, responses (approvals and disapprovals), acknowledgments and extensions which are part of this transaction.

C-10 **Prorations and Closing Adjustments.** At closing, Escrow shall prorate the following, if applicable, as of the date of closing: real property tax, lease rents, interest on assumed obligations, mortgage and other insurance premiums, maintenance, private sewer, marina, and/or association fees, tenant rents, and _____.
When applicable, Escrow shall charge to Seller and credit to Buyer the amount of any tenant's security deposit.

C-11 **Closing Costs.** The following are customary closing costs (including Hawaii General Excise Tax where applicable) and **are not intended to be an all-inclusive list.** Escrow may charge the appropriate party other closing costs as directed by the parties.

Charge to Buyer, if applicable:
40% of the premium for standard coverage title insurance
  and any additional costs relating to the issuance of
  extended coverage policy (including a lender's policy)
Cost of drafting mortgage and note or agreement of sale
Cost of obtaining Buyer's consents
Buyer's notary fees
All recording fees except documents to clear Seller's title
50% of Escrow fee
Condominium and Association ownership transfer fees
FHA or VA discount points and any mortgage fees

Charge to Seller, if applicable:
60% of the premium for standard coverage title insurance
Cost of drafting of conveyance documents and bills of sale
Cost of obtaining Seller's consents
50% of Escrow fee
Seller's notary fees
Cost of required staking or survey
Recording fees to clear Seller's title
FHA or VA mandatory closing fees
Conveyance tax
FIRPTA (Federal withholding tax)
HARPTA (State withholding tax)

BUYER'S INITIALS & DATE                    SELLER'S INITIALS & DATE   1-6-11

**ASSESSMENTS**

For purposes of Paragraphs C-12, C-13, and C-14, an assessment is defined as any obligation (not including prorations in Paragraph C-10) levied against the Property by a homeowner's association, governmental body, or any other entity with a legal right to assess. Assessments, if any, shall be charged as follows:

C-12  Any lump sum assessments levied against the Property prior to the Acceptance Date shall be paid by Seller [na] or assumed by Buyer [ha]. Exceptions, if any: na

C-13  Any assessments levied against the Property prior to the Acceptance Date which are being paid in installments shall be paid in full by Seller [ ] or pro-rated by Escrow as of the date of closing [x].
Exceptions, if any: ___

C-14  If a new assessment is authorized against the Property between the Acceptance Date and the Scheduled Closing Date, such assessment shall be paid as Buyer and Seller shall agree. If Buyer and Seller cannot reach an agreement within five (5) days of both parties being aware of the new assessment, either party may terminate this DROA and the Termination Provision (C-21) shall apply.

**OTHER CLOSING MATTERS**

C-15  **Risk of Loss.** Risk of loss passes to Buyer upon closing or possession, whichever occurs sooner.

C-16  **Consents.** Buyer and Seller may be required to obtain consents of lessors, homeowner or condominium associations, co-op boards, existing lenders, vendors or other entities. Buyer or Seller shall cooperate and take all reasonable action to obtain such consents.

C-17  **Possession.** Seller shall give Buyer possession at closing or upon recordation.

C-18  **Keys to the Property.** Seller, at Seller's sole cost and expense, shall provide Buyer at closing with all existing, but at least one set of functioning keys/controls (entry, interior, mail box, pool, security, parking area, and all garage door openers). **Buyer shall pay all deposits which may be required for any of these Items.** Unless Buyer and Seller agree otherwise, all keys/controls and garage door openers shall be released to Buyer only after Escrow has verbally notified Seller or Seller's Agent that the closing has occurred.

C-19  **Tenancy and Vesting.** Title shall vest in Buyer(s) as follows: (insert full legal name(s) and marital status)

Makalika 521 LLC
Tenancy: s/o
[ ] Tenancy to be determined. If Buyer has not yet determined the vesting and/or tenancy, Buyer shall provide Escrow in writing with the selected names and tenancy within fifteen (15) days after the Acceptance Date.

**CONTINGENCY PROCEDURES AND TERMINATION**

C-20  **Contingencies.** Buyer's obligation to buy and Seller's obligation to sell the Property may be subject in this DROA to satisfaction of one or more conditions (each called a "Contingency"). As used in this DROA, the term "Benefited Party" shall mean (a) Buyer, as to each Contingency which must be satisfied before Buyer is required to close on the purchase of the Property from Seller; and (b) Seller, as to each Contingency which must be satisfied before Seller is required to close on the sale of the Property to Buyer. If a Contingency is not satisfied within the time period specified for meeting such Contingency ("Contingency Period"), the Benefited Party may elect (a) to terminate this DROA and the Termination Provision (C-21) shall apply; or (b) to waive the Contingency. **Unless otherwise specified in writing in this DROA contingencies shall expire at 11:59 PM, Hawaiian Standard Time, on the day the Contingency period expires.**

C-21  **Termination.** If the Benefited Party elects to terminate this DROA because a Contingency for that party's benefit has not been satisfied, the Benefited Party must deliver to the other party a written notice terminating this DROA prior to the expiration of the Contingency Period, or such other termination period which may be set forth in a specific Contingency in this DROA. If the Benefited Party fails to deliver the written notice to the other party within such time period, the Contingency shall be deemed to be waived. Each party understands and acknowledges the requirement to act upon each Contingency according to the strict deadlines described herein.
If a Benefited Party so terminates this DROA, Buyer and Seller shall promptly execute all cancellation documents requested by Escrow, and Escrow shall, unless otherwise agreed to in this DROA, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this DROA. This Section is subject to the special provisions for Financing Contingencies set forth in Paragraphs C-24 to C-27. Any termination under this DROA shall be in writing and delivered to the other party to be effective.

**CONTINGENCY FOR CASH FUNDS**
*(Choose C-22 OR C-23)*

[na ]C-22 **No Contingency for Obtaining "Cash Funds".** Buyer represents that there are no contingencies to Buyer's obtaining the cash portions of the purchase price and closing costs to buy the Property (collectively the "Cash Funds"). Buyer shall neither delay nor extend the Scheduled Closing Date to obtain the Cash Funds.

[ x ]C-23 **Contingency on Obtaining "Cash Funds".** Buyer's obligation to buy the Property is subject to the following contingencies to Buyer obtaining the Cash Funds:_____

___Obtaining a loan from a reputable Lender_____

**FINANCING CONTINGENCIES**

[na ]C-24 **Financing Contingency.** Buyer's obligation to buy the Property is contingent upon Buyer obtaining the loan described in this DROA ("Mortgage Loan"). If Buyer does not obtain a conditional loan commitment letter, or is unable to satisfy all conditions of the loan commitment letter within the time periods specified in Paragraph C-25, then Buyer may terminate this DROA and the Termination Provision (C-21) shall apply. Buyer may waive this Financing Contingency and purchase the Property on an all cash basis or increase the amount of CASH FUNDS to thereby satisfy all of Lender's requirements for funding the loan. If Buyer elects either of these two options, Buyer shall promptly provide written notice of such election to Seller, together with evidence of Buyer's ability to perform PRIOR to expiration of the time periods stated in Paragraph C-25.

[ x ]C-25 **Buyer's Obligations.** Buyer shall act in good faith to obtain the loan as described in this DROA. Buyer is obligated to submit an application for a Mortgage Loan with required fees, and to deliver to Seller a pre-qualification letter within __15__ days after the Acceptance Date. The pre-qualification letter shall state that Buyer is credit worthy and qualified for the loan subject to Lender's requirements. Buyer is obligated to deliver to Seller by __12-15-10__ (Date) a conditional loan commitment letter which shall state that Buyer has been approved and Lender will make the loan under specified conditions. Buyer shall deliver to Seller written evidence that Buyer has satisfied all conditions specified by Lender except conditions which cannot be satisfied by Buyer until closing, such as payoff of Buyer's debt or receipt by Buyer of proceeds from the sale of Buyer's property, not later than __na__ days after issuance of such commitment letter. Buyer authorizes Seller and Seller's Agent to contact Buyer's Lender and Escrow regarding the status of Buyer's loan, including commitment letter and satisfaction of conditions.

C-26 **Seller's Right to Cancel.** Should Buyer fail to satisfy any obligation under C-25 within the time period specified, Seller shall have the right to terminate this DROA by providing written notice to Buyer. In the event of notice of termination by the Seller, Buyer and Seller shall promptly execute all cancellation documents requested by Escrow, and Escrow shall, unless otherwise agreed to in this DROA, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this DROA.

[na]C-27 **Contingency on Assumption of Seller's Existing Mortgage(s).** Buyer's obligation to buy the Property is subject to Buyer's assumption of Seller's existing loan(s) ("Seller's Mortgage") on the terms described in Paragraph C-1. Buyer shall make application to assume Seller's Mortgage within __na__ days after the Acceptance Date and shall provide evidence of approval for the assumption no later than __na__ days after the Acceptance Date. Buyer understands Seller does not warrant the assumability, the terms and conditions of Seller's Mortgage or the assumption terms. If the terms to assume Seller's Mortgage materially differ from those set forth in this DROA, then Buyer may either elect to terminate this DROA or to assume Seller's Mortgage on such terms. Buyer shall reimburse Seller at closing for Seller's existing reserve account balances. If a Lender does not release Seller from liability under Seller's Mortgage, Seller may elect to terminate this DROA and the Termination Provision (C-21) shall apply.

**DEFAULT PROVISIONS**

C-28 In the event Buyer fails to perform Buyer's obligations under this DROA (Seller not being in default), Seller may (a) bring an action for damages for breach of contract, or (b) retain the initial deposit and all additional deposits provided for herein as liquidated damages, and Buyer shall be responsible for any costs incurred in accordance with this DROA.

C-29 In the event Seller fails to perform Seller's obligations under this DROA (Buyer not being in default), Buyer may (a) bring an action for damages for breach of contract, (b) seek specific performance of this DROA, and (c) Seller shall be responsible for any costs incurred in accordance with this DROA.

C-30 The foregoing shall not exclude any other remedies available under this DROA to either Seller or Buyer on account of the other party's default.

C-31 In the event of default by a party and/or a legal action or arbitration (including a claim by a Broker for commission), the prevailing party shall be entitled to recover all costs incurred including reasonable attorneys' fees.

_____  
BUYER'S INITIALS & DATE

_____  
SELLER'S INITIALS & DATE  1-6-11

## MEDIATION AND ARBITRATION

C-32 **Mediation.** If any dispute or claim arises out of this DROA during this transaction or at any time after closing between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute, Buyer and Seller agree in good faith to attempt to settle such dispute or claim by non-binding mediation. This paragraph shall not apply to any complaint of unethical conduct against a Brokerage Firm and all its licensees who are obligated to comply with the Code of Ethics of the National Association of REALTORS®. Such complaints must be brought before the Local Board of REALTORS® of which the Brokerage Firm and all its licensees are members.

C-33 **Arbitration.** If any dispute or claim arises out of this DROA during this transaction or at any time after closing, between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction and if such dispute cannot be resolved through mediation, then the parties are encouraged to consider arbitration. It is recommended that the parties seek legal counsel to make this determination.

C-34 **Third Party Claims.** It is understood that if such dispute or claim is made by or against a third party who is not obligated or willing to mediate or arbitrate such dispute or claim, then Buyer and Seller shall not be required to mediate or arbitrate such dispute or claim.

## TITLE

**Preliminary Title Report.** Escrow is instructed to promptly order a Preliminary Title Report on the Property for delivery to Seller, Buyer and their agents.

C-35 **Title.** Seller agrees, subject to Paragraph C-36 if selected, to convey the Property with warranties vesting marketable title in Buyer, free and clear of all liens and encumbrances EXCEPT: (a) easements, covenants, conditions, reservations or restrictions now of record **WHICH DO NOT MATERIALLY AFFECT THE VALUE OF THE PROPERTY** and (b) _____ .

**(Choose C-36 OR C-37)**

[ X ] C-36 If the Preliminary Title Report, or any other report reveals that title cannot be delivered by Seller in accordance with Paragraph C-35, Seller shall use Seller's best efforts to cure any defects. If, within __10__ days following receipt of any reported discrepancies Seller is unable to cure such defects in title, Buyer may elect to purchase the Property with such defect(s) in title and Seller shall not be liable if Seller had acted in good faith. If Buyer elects not to accept the Property with such defects, either Buyer or Seller may terminate this DROA and the Termination Provision (C-21) shall apply. *(checked)*

[ na ] C-37 If Buyer is not satisfied with the Preliminary Title Report, Buyer may elect, within __5__ days of Buyer's receipt of the Preliminary Title Report, to terminate this DROA and the Termination Provision (C-21) shall apply.

## TRANSACTIONS INVOLVING FOREIGN OR NON-RESIDENT BUYER AND SELLER

C-38 **HARPTA Withholding Required if Seller is a Non-Resident of the State of Hawaii.** Under Hawaii law, if Seller is a non-resident person or entity (corporation, partnership, trust, or estate) of the State of Hawaii, Buyer must withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate form to the State Department of Taxation. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from HARPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the State Department of Taxation.

C-39 **FIRPTA Withholding Required if Seller is a Foreign Person.** Under the Internal Revenue Code, if Seller is a foreign person or entity (non-resident alien, corporation, partnership, trust, or estate), Buyer must generally withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward this amount with the appropriate Internal Revenue Service ("IRS") form. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from FIRPTA within fourteen (14) days of Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the IRS.

C-40 **Additional Disclosures Required by Foreign Buyers and Sellers.** Buyer and Seller understand that under statutes and ordinances such as the Agricultural Foreign Investment Disclosure Act of 1978, the International Investment and Trade in Services Survey Act, and the revised Ordinances of the City and County of Honolulu, among others, disclosures are required by foreign Buyers and/or Sellers under certain conditions.

---

BUYER'S INITIALS & DATE                       Page 6 of 12                       SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                                                  RR201 Rev. 3/06 For Release 5/06

**STAKING & SURVEY** This may/may not apply to condominiums or cooperatives.
*(Choose C-41 OR C-42)*

[na ]C-41 **Staking (Boundary Markers).** Prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a registered land surveyor stake the Property. Buyer may have a registered land surveyor verify the accuracy of the location of the stakes prior to closing. Seller shall reimburse Buyer for the cost of this verification at closing ONLY if the location of the original stakes proves to be inaccurate. Buyer understands that staking is not the same type of survey as described in Paragraph C-42, and does not confirm the accuracy of the description or the land area of Property, or the existence or absence of encroachments onto the Property or onto a neighboring property.

[na ]C-42 **Survey.** Prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a registered land surveyor (a) stake the Property even if the stakes are visible and, (b) if improvements exist along the Property line, provide Buyer with a map (with surveyor's stamp) and accompanying report to show the perimeters of the Property and the location of any improvements in the vicinity of the perimeter Property lines. This survey and map may not address whether improvements on the Property are in compliance with State and/or County requirements, and/or subdivision covenants, conditions, and restrictions.

C-43 **Boundary Encroachment.** If an encroachment onto an adjoining property or onto the Property by an adjoining owner is revealed or discovered, such encroachment either shall be removed or Seller shall obtain encroachment agreement(s) with the affected adjoining owner(s) which is acceptable to Buyer. If neither occurs within _____ days of discovery or by the Scheduled Closing Date, whichever occurs earlier, Buyer may accept the encroachment(s) or elect to terminate this DROA and the Termination Provision (C-21) shall apply. Buyer should be aware that, under certain circumstances, Hawaii law allows acceptable tolerances for discrepancies involving improvements built in the vicinity of the perimeter of the Property lines.

**SELLER'S DISCLOSURES** (Required by Hawaii Statute for residential real property)

C-44 **Seller's Obligation to Disclose. Under Hawaii law,** Seller is obligated to fully and accurately disclose in writing to Buyer any fact, defect, or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person. Within __10__ days from the Acceptance Date, Seller shall provide Buyer with a written disclosure statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of Seller; (ii) can be observed from visible, accessible areas; or, (iii) which are required by Section 508D-15 of the Hawaii Revised Statutes.

Section 508D-15 of the Hawaii Revised Statutes covers property which lies: (i) within the boundaries of a special flood hazard area as officially designated on Flood Insurance Administration maps promulgated by the appropriate Federal agencies for the purposes of determining eligibility for emergency flood insurance programs; (ii) within the boundaries of the noise exposure area shown on maps prepared by the Department of Transportation in accordance with Federal Aviation Regulation Part 150-Airport Noise Compatibility Planning (14 Code of Federal Regulations Part 150) for any public airport; (iii) within the boundaries of the Air Installation Compatibility Use Zone of any Air Force, Army, Navy or Marine Corps airport as officially designated by military authorities; or (iv) within the anticipated inundation areas designated on the Department of Defense's Civil Defense Tsunami Inundation Maps. Subject to the availability of maps that designate the four areas by tax map key (zone, section, plat, parcel), the Seller shall include such material fact information in the Disclosure Statement provided to the Buyer. If such information is not available, no information will be provided to Buyer.

C-44A **Later Discovered Information.** Under Hawaii law, if after Seller delivers a disclosure statement to Buyer and prior to closing, Seller becomes aware of information which was not previously disclosed or which makes any statement in the disclosure statement inaccurate, and said information directly, substantially, and adversely affects the value of the Property, then Seller shall provide an amended disclosure statement (a written statement prepared by Seller or at Seller's direction) to Buyer within ten (10) days after the discovery of the inaccuracy, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the Property. Buyer's rights upon receipt of the amended disclosure statement are found in Paragraph C-46.

C-45 **Seller's Disclosure is Not a Warranty.** This disclosure statement is NOT a warranty of any kind. Under Hawaii law, the disclosure statement shall not be construed as a substitute for any expert inspection, professional advice, or warranty that Buyer may wish to obtain.

BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®  Page 7 of 12  RR201 Rev. 3/06 For Release 5/06

C-46  **Buyer's Rights Upon Receipt of Disclosure Statement.** Seller is required by law to obtain from Buyer an acknowledgment of receipt of the disclosure statement in writing. Buyer shall acknowledge receipt of the disclosure statement in writing. Upon receipt of the disclosure statement, Buyer shall have __10__ days to examine the statement and to rescind the DROA. Should Buyer elect to rescind the DROA, Buyer must give Seller directly or Seller's Agent written notice of such rescission within the stated time period. Upon receipt by Buyer of an amended disclosure statement, or upon discovery by Buyer of a failure by Seller to disclose material facts, or upon discovery by Buyer that the disclosure statement contains an inaccurate assertion that directly, substantially, and adversely affects the value of the Property, Buyer may elect to rescind the DROA. Buyer shall have __10__ days from discovery thereof or from receipt of the amended disclosure statement, whichever is earlier, to indicate in writing an election to rescind the DROA. Buyer may elect, in writing, to accept the amended disclosure statement prior to the end of the rescission period.

C-47  **Buyer's Remedies If Seller Fails to Comply with Paragraphs C-44 or C-44A.** Buyer may elect to complete the purchase of the Property even if Seller fails to comply with Paragraphs C-44 or C-44A. When Buyer is provided a disclosure statement or amended disclosure statement and Buyer decides to rescind the DROA, Buyer is limited in damages to the return of all deposits; and in such case, Buyer's deposits shall be immediately returned. If Seller negligently fails to provide the required disclosure statement or amended disclosure statement, Seller shall be liable to Buyer for the amount of actual damages suffered as a result of the negligence. In addition to the above remedies, a court may also award the prevailing party's attorneys' fees, court costs, and administrative fees.

C-48  **Mediation.** Under Hawaii law, any dispute pertaining to the Mandatory Seller's Disclosure Statute shall be handled pursuant to Paragraphs C-32 and C-33.

C-49  **Asbestos Disclosure.** Buyer is aware that asbestos materials are hazardous to one's health, particularly if asbestos fibers are released into the air and inhaled. In the past (before 1979, but possibly since) asbestos was a commonly used insulation material in heating facilities and in certain types of floor and ceiling materials, shingles, plaster products, cement and other building materials. Buyer is aware that Buyer should make appropriate inquiry into the possible existence of asbestos on the Property. Structures having "popcorn" or "cottage cheese" type ceilings may contain asbestos fibers or asbestos-containing material. Such ceilings should not be disturbed since it could release asbestos fibers in the air. Any disturbance should be done only by licensed abatement contractors.

C-49A  **Hazardous Waste and Toxic Substances Disclosure.** Buyer is aware that federal and state laws place strict liability on property owners for dangers caused by hazardous waste management and may require that such owner pay for the cost of the cleanup of hazardous substances and other toxic substances. Buyer is aware that Buyer should make appropriate inquiries into the past use of the Property and should seek an environmental assessment to ascertain the possible existence of such hazardous substances or materials on or under the Property. Buyer is aware Buyer may have liability for hazardous substances located on or under the Property even if Buyer did not cause such substances to be on or under the Property.

C-49B  **Mold Disclosure.** Buyer is aware that mold and/or other microscopic organisms may exist on the Property. Molds are simple, microscopic organisms, present everywhere. Mold spores may cause health problems. Mold will grow and multiply whenever sufficient moisture, temperature and organic material are present. Real estate Brokerage Firms, brokers, and agents are not qualified to inspect the Property for mold or to make recommendations or determinations concerning possible health or safety issues.

C-50  **Sex Offender Registration ("Megan's Law").** Hawaii has enacted a law requiring sex offenders to register with the Attorney General's office. Seller makes no representation as to whether or not the public will have access to this information. Neither Seller nor any real estate agent is required to obtain information regarding sex offenders.

**INSPECTIONS, MAINTENANCE AND WARRANTIES**

C-51  **Inspection of Property.** At Buyer's sole cost and expense Buyer may (personally or by any expert, professional, or other representative of Buyer's choice): (a) inspect the Property or any portion thereof; (b) inspect all major appliances and fixtures (plumbing, electric, and gas) included in the sale; (c) inspect all public records relating to the Property; and (d) inspect all applicable laws and regulations which may affect the Property. Seller shall provide Buyer and Buyer's representatives access to the Property for this purpose, during reasonable hours with reasonable prior notice to Seller. The obligation of Buyer to purchase the Property is contingent upon Buyer's approval of inspection results and acceptance of the condition of the Property within __10__ days after the Acceptance Date. All inspections must be completed within this time period.

If Buyer disapproves of the inspection results within such time period, Buyer may elect to terminate the DROA pursuant to the Termination Provision (C-21).

If Buyer requests that Seller make certain corrections to the Property, and the parties cannot reach agreement, Buyer may, within the specified time period, accept the Property or terminate the DROA and the Termination Provision (C-21) shall apply.

**IF BUYER FAILS TO MAKE AN ELECTION IN WRITING WITHIN THE SPECIFIED TIME PERIOD, BUYER WILL HAVE WAIVED THIS CONTINGENCY.**

BUYER'S INITIALS & DATE                        SELLER'S INITIALS & DATE   1-6-11

©Hawaii Association of REALTORS®        Page 8 of 12        RR201 Rev. 3/06   For Release 5/06

[na ]C-52 **Property Condition Maintenance.** Seller shall maintain the interior and exterior of the Property in the same condition and repair as when Buyer inspected the Property pursuant to Paragraph C-51, or as otherwise agreed between Buyer and Seller. If the Property has not been maintained, then the provisions of Paragraph C-53A shall apply.

[ x ]C-53 **Final Walk Through.** Buyer and/or Buyer's representative shall have the right to conduct a final walk through of the Property no later than ___20___ days prior to closing: (a) to confirm that the Property is in the same condition and repair that it was on the date that Buyer inspected the Property pursuant to Paragraph C-51; and/or (b) to inspect the repairs and/or replacements made by Seller, as agreed between Buyer and Seller. Seller understands that the final walk through requires that the utilities be on, including propane, if applicable, at Seller's expense. If Buyer and/or Buyer's representative fails to conduct the final walk through within the time period, Buyer will have waived this right.

C-53A **Withheld/Collected Funds.** If required repairs and maintenance have not been completed by closing, an amount equal to 150% of the estimated cost shall be withheld/collected from Seller and retained in Escrow until completion. All repairs and maintenance bills will be paid through Escrow. Any balance remaining after completion of all repairs and maintenance shall be returned to Seller; provided, however, that if repairs and maintenance are not completed within ___na___ days after closing, said funds will be disbursed to Buyer.

C-54 **No Continuing Warranty.** Buyer understands that no continuing warranty after closing regarding the interior or exterior of the Property is expressed or implied.

C-55 **Home Warranty Programs.** Buyer understands that Buyer may obtain from a third party for a fee, home warranties covering appliances, electrical and plumbing equipment and other items included with the Property. If such a home warranty is available, it may be obtained at Buyer's expense from any provider of Buyer's choice.

[na ]C-56 **Existing Warranties, Plans, etc.** Seller shall provide to Buyer at closing all existing warranty documents in Seller's possession covering the improvements and personal property being sold to Buyer such as instruction booklets in Seller's possession covering the appliances being sold, all originals and copies in Seller's possession of blueprints, specifications, and copies of architectural or engineering drawings relating to the Property. Buyer understands: (a) any warranties delivered by Seller to Buyer represent obligations of other persons, not Seller; (b) the warranties and other documents are provided for informational purposes only; (c) may not reflect improvements as built; and (d) Seller does not promise that any such warranties are transferable to Buyer, and that Buyer must contact the providers of such warranties to determine whether the warranties are transferable to Buyer.

[ x ]C-57 **Removal of Items from Property.** Seller shall dispose of all personal belongings, trash and junk, both inside and outside any improvements.

**(Choose C-57A OR C-57B OR NEITHER)**

[na ]C-57A **Cleaning.** Prior to closing, Seller shall, at Seller's expense, have the interior of the improvements on the Property cleaned. Cleaning shall include all appliances, carpets, cupboards, drawers, floors, jalousies, screens and windows.

[na ]C-57B **Cleaning Credit.** Seller shall credit Buyer at closing $___na___ for cleaning, as described in Paragraph C-57A.

[na ]C-58 **Pet Related Treatment.** Seller shall, at Seller's expense, remove any pets from the Property, have the carpets within the improvements on the Property professionally cleaned, and the interior of the Property treated for fleas/ticks by a professional. If Seller does not have the Property treated for fleas/ticks by a professional as stated, and provide satisfactory evidence of same to Buyer and Escrow not later than ___na___ days prior to the scheduled Closing Date, then Seller agrees that an amount equal to 150% of the estimated cost of professionally treating the Property for fleas/ticks shall be held in Escrow until completed; provided however, that any remaining funds held shall be automatically disbursed to Buyer by Escrow if the Property is not professionally treated for fleas/ticks within ___na___ days after closing. All professional treatment bills shall be paid through Escrow and any balance remaining after completion of professional treatment shall be returned to Seller.

BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS® — Page 9 of 12 — RR201 Rev. 3/06 For Release 5/06

**TERMITE PROVISION**

Buyer is aware that the State-approved Termite Inspection Report (TIR) addresses only visible evidence of termite infestation and visible damage in accessible areas. It does not address infestation or damage occurring in inaccessible areas of the improvements described in this DROA. Seller agrees to disclose, in Seller's disclosures, any prior and/or current infestation and damage of which Seller is aware.

C-59   **Termite Inspection Contingency.** Within __na__ days of the Acceptance Date __na__ shall select a licensed pest control company ("Company"), to conduct an inspection and issue a TIR on the improvements which are part of the Property. Should such party fail to select a Company and notify the other party in writing of the name of a Company within the time stated, the other party shall select a Company within five (5) days thereafter. Seller shall promptly order the inspection and TIR from the selected Company. The TIR shall be delivered to Buyer by __na__ (Time period/date). __na__ (Buyer or Seller), shall pay for the inspection and the issuance of the TIR at a cost not to exceed __na__. If Buyer's Lender requires an updated TIR prior to funding Buyer's loan, Buyer shall pay for the updated report.

If the TIR indicates visible evidence of termite infestation, Seller shall order and pay for recommended treatment for that condition (not to include preventive maintenance). Buyer and Seller understand such treatment may cause damage to plants. The obligation of the Buyer to purchase the Property is contingent upon the delivery to Buyer within the time specified above of a TIR stating that there is no visible evidence of termite infestation, or the treatment of such improvements by no later than five (5) days prior to the Scheduled Closing Date. If the Contingency is not fulfilled within the time period(s) specified, Buyer may terminate this DROA and the Termination Provision (C-21) shall apply.

C-60   **Termite Damage.** In the event the TIR indicates there is visible damage to the improvements caused by termite infestation, and said damage directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph C-44A.

**RENTAL PROPERTY MATTERS**

*(Choose C-61 OR C-62)*

[na] C-61   **Existing Leases.** Buyer shall accept title to the Property subject to the existing: *(Choose all that apply)*
  [ ] Leases
  [ ] Property Condition Form
  [ ] Rental Management Contract(s)
  [ ] Short Term Vacation Rental Reservation(s)
  [ ] Other _____
  [ ] Other _____

Any security deposits or vacation deposits will be transferred to Buyer at closing. Copies of such documents shall be delivered to Buyer within __na__ days of the Acceptance Date. If within __na__ days of receipt of these item(s), Buyer does not accept the Property based upon information in these documents, Buyer may terminate this DROA and the Termination Provision (C-21) shall apply.

[x] C-62   **Delivery of Property at Closing.** Seller shall deliver possession of the Property at closing vacant and free of tenants, leases, rental management contracts, short term rental reservations, or any other rental or service commitments.

C-63   **Lease Changes During Escrow.** During the escrow period, Seller shall not, without the written consent of Buyer, make any changes to existing leases or enter into any new leases which extend beyond the Scheduled Closing Date.

**CONDOMINIUM/SUBDIVISION/HOMEOWNER ORGANIZATIONS** *(Choose all that apply)*

[na] C-64   **Contingency on Homeowner Organization Documentation Approval.** Buyer's obligation to purchase the Property is contingent upon Seller providing the following documentation to the Buyer for review and approval:

  [ ] Approved Minutes of the last three (3) Board of Directors Meeting
  [ ] Articles of Incorporation/Association and Amendments, if any
  [ ] Board of Directors and Association Minutes issued during the escrow period, if applicable
  [ ] By-laws and Amendments
  [ ] Copy of any and all pending litigation complaints filed by or against the Owner's Association and/or its directors that are currently unresolved, if any
  [ ] Current and/or Proposed Budget
  [ ] Current Financial Statement
  [ ] Current House Rules
  [ ] Declaration and Amendments
  [ ] Insurance Summary
  [ ] Minutes of the last Annual Meeting
  [ ] Property Information Form RR105c, if obtainable
  [ ] Reserve Study or Summary, if obtainable
  [ ] Other _____
  [ ] Other _____

Seller, at Seller's expense, shall furnish the specified documents to the Buyer within __na__ days of Acceptance Date. If within __na__ days of receipt of these documents Buyer does not accept the Property based on information contained in these documents, Buyer may terminate this DROA and the Termination Provision (C-21) shall apply. In the event that this DROA is canceled, Buyer agrees to promptly return all documents specified here to Seller or Seller's Agent, including any other documents provided to Buyer during the escrow period or, Seller not being in default, Buyer shall reimburse the Seller for the cost of such documentation.

BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®   Page 10 of 12   RR201 Rev. 3/06 For Release 5/06

C-65  **Common Element Discrepancies.** Seller is not responsible for repair of condominium common and limited common elements or cooperative common areas. Seller is only responsible for reporting such defects or damage to the Association of Apartment Owners or other governing body insofar as Seller's unit is affected.

[na ]C-66  **Contingency on Subdivision Documentation Approval.** Buyer's obligation to purchase the Property is contingent upon Seller providing the CC&R's (Covenants, Conditions, and Restrictions) Design Standards and/or Guidelines and any other applicable subdivision and/or title documents to the Buyer for review and approval. Seller, at Seller's expense, shall deliver the documents to the Buyer within ___na___ days of Acceptance Date. If within ___na___ days of receipt of the documents, Buyer does not accept the Property based on information contained in the documents, Buyer may terminate this DROA and the Termination Provision (C-21) shall apply. In the event that this DROA is canceled, Buyer agrees to promptly return all documents to Seller or Seller's Agent, including other documents provided to Buyer during the escrow period or, Seller not being in default, Buyer shall reimburse the Seller for the cost of such documentation.

[x ]C-67  **OTHER SPECIAL TERMS** (Please number) C-67.1 See Attached Exhibit "B"
_____
_____
_____
_____
_____
_____
_____
_____

### BROKERAGE FIRMS SERVICES AND DISCLAIMERS

C-68  **Scope of Services.** The Brokerage Firms assisting in this transaction, including their owners, licensees, salespersons, and employees, recommend that Buyer and Seller each consult their own attorney, accountant, appraiser, architect, pest control expert, home inspector, insurance advisor, contractor, land surveyor, civil engineer, structural engineer, soils engineer, land use professional, zoning expert, environmental expert, designer, estate planner, title insurer, other professionals and/or subject matter experts should they have any questions within those fields about this transaction. Buyer and Seller understand and acknowledge that neither party is relying upon the Brokerage Firms for any of the foregoing services or advice.

C-69  **Disclaimers by Brokerage Firms.** Buyer and Seller understand that the Brokerage Firms have not made any representations or warranties, and have not rendered any opinions about: (a) the legal or tax consequences of this transaction; (b) the legality, validity, correctness, status or lack of any building permits which may have been required for the Property; or (c) the land area of the Property, the location of the boundaries, or the size of any improvements on the Property.

C-70  **Rental Property.** Buyer understands that Seller and the Brokerage Firms are not offering to sell or selling the Property together with any existing or future rental pool or other rental arrangement. Seller and the Brokerage Firms make no representations or guarantees about future rents or future resale value. Buyer understands that should Buyer rent the Property after closing, Buyer is assuming all risks relative to all of the foregoing. This sale includes real property only, and the intent is not to convey a security or investment security as defined by the U.S. Securities and Exchange Commission or other governmental agency.

C-71  **Obligations.** Brokerage Firms shall not be held liable to either Buyer or Seller for the failure of either Buyer or Seller to perform their obligations pursuant to this DROA.

C-72  **Permission.** The parties grant the Brokerage Firms permission to supply data to the Multiple Listing Service regarding the sales price, terms, and listing status of this transaction for use by other brokers and real estate professionals in making market studies, providing service to the public and advising their clients.

[ ]C-73  **Disclosure of Real Estate Licensing Status.** Hawaii law requires that licensees disclose that they hold a real estate license in any transaction in which they are purchasing or selling real property as a principal, or in which they are buying for themselves, immediate relatives, or an entity in which they have an interest. If applicable, the licensee(s) in this transaction disclose the following: _____

### FACSIMILE (FAX) SIGNATURES AND COUNTERPARTS

C-74  Fax executed copies of this DROA and any related documents shall be fully binding and effective for all purposes, whether or not originally executed documents are transmitted to Escrow. Fax signatures on documents will be treated the same as original signatures; however, each party agrees to promptly forward original executed documents to Escrow. The parties understand conveyance, mortgage and other recordable documents must be delivered in original form and will not be acceptable if signed only on facsimile.

C-75  This DROA and any addenda and related documents may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so signed shall be deemed to be an original, and all of which taken together shall constitute one and the same document, which shall be binding upon all of the parties, notwithstanding that all of the parties do not sign the original or the same counterpart.

BUYER'S INITIALS & DATE                                                                                   SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                     Page 11 of 12                                     RR201 Rev. 3/06  For Release 5/06

**ACCEPTANCE DATE AND OTHER DEFINITIONS**

C-76 As used in this DROA, the term "Acceptance Date" means the date on which this DROA becomes binding upon the parties (i.e. when Buyer's Offer is accepted by Seller or Seller's Counter Offer is accepted by Buyer).

C-77 As used in this DROA, the term "day" means a calendar day. All dates and times are based on Hawaiian Standard Time.

C-78 **Time is of the Essence.** Except as otherwise provided in this DROA, time is of the essence in the performance by all parties in their respective obligations under this DROA.

C-79 **Complete Agreement.** This DROA constitutes the entire agreement between Buyer and Seller and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements (both written and oral) of Buyer and Seller. No variation or amendment of this DROA shall be valid or enforceable without written approval by Buyer and Seller. All agreements and representations about the Property must be set forth in writing, and the parties agree that to be effective, any representation made by a Brokerage Firm or any party hereto must be set forth in writing in this DROA, or an amendment hereto or in any required Disclosure Statement. Buyer and Seller shall each hold harmless and release the Brokerage Firms from any claims based upon any alleged representation which is not set forth in writing as stated in this paragraph.

Offer Date 1-6-11, ___ AM/PM  Buyer's Name Makalika 521 LLC
Buyer's Address 792 Hualani St.  Signature [signed]
Hilo, Hawaii 96720  Buyer's Name
Phones 960-3561  Signature [signed]
Fax 969-7417  E-Mail juemura@hawaii.rr.com

### SECTION D: ACCEPTANCE OR COUNTER OFFER

[ ]  **ACCEPTANCE OF OFFER.** Seller agrees to sell the Property at the price and terms offered above and acknowledges receipt of a copy of this Offer and acceptance.

[ ]  **COUNTER OFFER.** Seller agrees to sell the Property at the price and terms offered above as amended by the attached Counter Offer and acknowledges receipt of a copy of the Offer.

**IN EITHER EVENT:**

Seller agrees to pay to _____ (Brokerage Firm) a commission for the sale of the Property in the amount of _____ per the terms of the Listing Contract, or if there is no listing contract, then per other agreement between Seller and Brokerage Firm. Seller instructs Escrow to pay the commission directly to Brokerage Firm at closing in U.S. Dollars. These instructions cannot be changed without the written agreement of the Brokerage Firm and Seller. Seller further consents to Brokerage Firm sharing of the commission with another Brokerage Firm which may have provided services to Buyer. In the event Buyer defaults and Seller retains any of Buyer's deposit or obtains other monetary damages against the Buyer, Seller shall pay one-half thereof to Brokerage Firm as a commission, provided, however, that this amount so paid to Brokerage Firm shall not exceed what would have been the full commission to the Brokerage Firm.

Date 1-6-2011, 3:30 AM/PM  Seller's Name NANI MAU INC
Seller's Address 421 MAKALIKA ST  Signature [signed]
Hilo HI 96720  Seller's Name
Phones 959 3500  Signature
Fax 959 3501  E-Mail KEN @ HOTTOURS. US

Seller is a Foreign Person [ ]   Non-Hawaii Resident [ ]   Owner/Occupant [ ]   Other [✓] _____

NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES, AS AMENDED. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

©Hawaii Association of REALTORS®   Page 12 of 12   RR201 Rev. 3/06 For Release 5/06